COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Powell
Argued at Alexandria, Virginia


DANIEL J. CHRISTOVICH

                                                        MEMORANDUM OPINION[*] BY
v.       Record No. 1632-08-4              JUDGE RANDOLPH A. BEALES
                                                        SEPTEMBER 15, 2009
REBECCAH L. CHRISTOVICH


              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                            Richard B. Potter, Judge[1]

              Susan M. Hicks (The Susan Hicks Group P.C., on brief), for
              appellant.

              No brief or argument for appellee.


        Daniel J. Christovich (father) filed several petitions requesting several changes to the child

custody order entered when he was divorced from Rebeccah L. Christovich (mother).  In particular,

he asked that he be given more visitation with the children and that the court award him custody of

one son, who would then be enrolled in school in Maryland.[2]  The Prince William County Circuit

Court denied his petitions in an order dated June 6, 2008.  Father appeals from that order.  After

considering the arguments presented by father, we affirm the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge Herman A. Whisenant, Jr. presided over portions of this case and made rulings
that were incorporated into the final order.  However, Judge Potter signed the final order.

[2] Only one child, a son, is discussed individually in this opinion.  Comparatively little of
the record addresses the other children.

As the parties are familiar with the facts in this case, and as this opinion has no precedential value, we forego a discussion of the record generally.  We will address the relevant facts as we discuss father's arguments.

## I.  Specific Rulings

Father raises several issues related to particular rulings made by the trial court during the custody proceedings.

### A.  Opening Statements

Father claims that the trial court abused its discretion by "suggesting that opening statements be waived" and then limiting opening statements to three minutes.  However, father did not preserve this argument for appeal pursuant to Rule 5A:18 because he did not make his objection known to the trial court when it announced the time limit.  Instead, his counsel said, "Okay, very well," indicating to the trial court that appellant had no objection.  Therefore, we do not address this contention on appeal.  See Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986) ("[W]e adhere to the policy of placing an affirmative duty on the parties to enter timely objections to rulings made during the trial.").

### B.  Witnesses Gibson, Flannery, and Rosenberg

Second, father argued that the testimony of three witnesses (Mark Gibson,[3] John Flannery, and Barry Rosenberg) was improperly excluded.  "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988).  In addition, if a trial court did err in refusing to admit evidence, then that error must

---

[3] Father argues that Gibson's testimony was improperly excluded in both Questions Presented II and V.

have prejudiced the appellant in order for this Court to overturn the lower court's decision. Code § 8.01-678; Clay v. Commonwealth, 262 Va. 253, 259-60, 546 S.E.2d 728, 731-32 (2001).

Gibson was a private investigator, hired by father to watch mother's house for several days. The trial court refused to let him testify, but did accept his full report into evidence. The trial court also allowed father to proffer into the record the substance of Gibson's testimony. In addition, mother essentially conceded the substance of Gibson's report, acknowledging that she left the parties' teenage children at home alone on several occasions. Therefore, most, if not all, of the information from Gibson's investigation was admitted at trial. Thus, even if the trial court erred in refusing to allow Gibson to testify, we cannot find that this error prejudiced father as the court heard all of the information that father wanted to introduce through Gibson. See Clay, 262 Va. at 259-60, 546 S.E.2d at 731-32.

Flannery was the attorney that father hired to represent the parties' son who had been expelled from school for possessing marijuana. Father incorrectly characterizes the trial court's ruling as "refus[ing] to allow John Flannery to testify." In reality, Flannery prevented father from calling him as a witness because he did not appear in court, and father did not ask for a continuance to give Flannery time to appear. The trial court simply pointed out, "[I]f he's not here[, then] he won't be called as a witness." Thus, the trial court committed no error here – father and Flannery prevented Flannery from testifying, not the court. In addition, father did not proffer what information Flannery would have added to the record if he had been there to testify.[4] Therefore, even if the trial court erred by preventing Flannery from testifying, father did not preserve any error here for appellate review. See Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992) ("It is well settled that when a party's evidence has been ruled

---

[4] Several witnesses and numerous documents admitted into evidence addressed many of the issues on which Flannery apparently would have testified. The record does not make clear what non-duplicative evidence would have been presented through Flannery's testimony.

inadmissible, the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible.").

Rosenberg apparently lived in father's neighborhood in Maryland. Father wanted Rosenberg to testify about the son's relationship with father and father's new wife and about the community in Maryland. The son was not available to testify regarding these issues because father did not bring him to the hearing.[5] The trial court refused to accept Rosenberg's testimony, saying that "if you'd like for me to hear what [the son] has [to say] I'd like to hear [the son] tell me that and not somebody else in his place, ma'am." Father did not object or argue with this reasoning, so he did not preserve his objection under Rule 5A:18. In addition, father had already conceded that the son did not want to move to Maryland and did not want to attend the high school in Maryland. Therefore, even if Rosenberg had testified about the son's relationship with his father and father's neighbors in Maryland, we are not convinced that those observations would have influenced the outcome of this case. We find no prejudice here. See Clay, 262 Va. at 259-60, 546 S.E.2d at 731-32.

We find the trial court did not abuse its discretion in "refusing" to allow the testimony of Gibson, Flannery, or Rosenberg.

## C. Limiting Testimony

Father argues that the trial court erred in limiting the introduction of some evidence. He argues the court erred by limiting his new wife's testimony and by disallowing evidence that mother pushed the new wife.

---

[5] Mother wanted the children brought to the hearing so that they could talk to the judge, but she did not subpoena them. Father had visitation with the children on the day of the hearing and refused to bring them to court.

Regarding the testimony of the new wife, the trial court questioned father when he called her to testify, asking father's attorney what relevant information would be added to the case by allowing her to testify. In response, father's counsel proffered that the new wife would testify about "emails that Ms. Christovich sent her." The trial court noted that it did not want more "throwing mud" and that the evidence needed to address "a material change" and not events prior to the parties' divorce. The court then said, "I'll let you call her briefly." The new wife then testified about several emails, which were introduced into evidence, about mother calling the new wife "it" in front of the children, about the new wife's relationship with the children, about the home in Maryland, and about the school in Maryland that father wanted the son to attend. Father's counsel then said, "I have no further questions."

Although the trial court said that the new wife could testify "briefly," the court did not set a time limit for her testimony. Father's counsel was not curtailed when questioning the new wife by any judicially imposed time constraints. In addition, father did not proffer what other relevant and non-duplicative information would have been introduced into evidence if the trial court had permitted more than a "brief" examination. Therefore, we have no basis upon which to make a finding that the trial court committed error here. See Smith, 14 Va. App. at 357-58, 416 S.E.2d at 715.

Father also argues that the trial court erred in refusing to allow testimony about mother's behavior toward his new wife when they were together with the children. However, the only specific incident excluded by the trial court regarded an allegation that mother pushed the new wife on the day of the son's expulsion hearing. This incident was described during father's testimony, but the proffer did not indicate that mother pushed the new wife while they were in front of the children. No other proffers of specific incidents were presented to the trial court. However, mother did admit that she did not like the new wife.

If mother pushed the new wife, then she certainly acted improperly, but this allegation, without a proffer that the incident occurred in front of the children, was largely irrelevant to a custody determination, which was the issue before the trial court. In addition, the trial court expressly found such evidence carried little weight given the other facts here. See Venable v. Venable, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986) ("The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it."). The testimony in this case proved that the parties could not get along and could not agree on what was in the best interests of their children. The trial court did not need to hear additional information about incidents between the new wife and mother. Any error in excluding this evidence was harmless. See Clay, 262 Va. at 259-60, 546 S.E.2d at 731-32.

### D. Modification of the February 21, 2008 Order

Father argues that the trial court erred when it rescinded a portion of an order entered on February 21, 2008, requiring that mother cooperate with Flannery, who was representing the son in the expulsion proceedings. On appeal, father claims that the order was already twenty-one days old, that this issue was not before the court as it was not included in the pretrial order, and that Flannery's services were potentially needed if criminal charges are taken out against the son.

First, Rule 1:1, which prohibits amendment of orders more than twenty-one days after their entry, applies to "[a]ll final" orders, *not* any order of a court. The February 21, 2008 order was not a final order – the June 6, 2008 order from which husband appeals was the final order in this case. Therefore, the trial court had jurisdiction to amend the order.

In addition, although husband appended various objections to the end of the June 6, 2008 final order, nothing in the record indicates that these objections were presented to the trial court at the time of its ruling on April 14, 2008. Nothing in the record suggests that husband asked the trial

court to rule on these objections. Therefore, they were not timely made, and we may not consider them on appeal. See Rule 5A:18; Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002) (noting that the purpose of the Rule for preserving appeals is to allow a trial court an "opportunity to rule intelligently on a party's objections" and to avoid unnecessary appeals); Thomas v. Commonwealth, 44 Va. App. 741, 750, 607 S.E.2d 738, 742, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005) (noting that an objection "must be both specific and timely – so that the trial judge would know the particular point being made in time to do something about it").

For these reasons, we decline to address these arguments.[6]

## II. General Rulings

Father claims that the trial court did not consider the best interests of the children, as required under Code § 20-124.3, in ruling on his motion to change the previous custody order and his motion to permit him to enroll his son in a Maryland school. Instead, father claims the trial court considered what was in mother's best interests and refused to give appropriate weight to the son's expulsion and mother's anger with his new wife. Therefore, he claims, the trial court abused its discretion in deciding not to amend the previous custody arrangements. We find the trial court did not abuse its discretion.

### A. Legal Standard Used by the Trial Court

This Court presumes that a trial court applies the correct law. Bottoms v. Bottoms, 249 Va. 410, 414, 457 S.E.2d 102, 105 (1995) ("Absent clear evidence to the contrary in the record, the judgment of a trial court comes to an appellate court with a presumption that the law was correctly applied to the facts."); West v. West, 53 Va. App. 125, 132, 669 S.E.2d 390, 394

---

[6] We also note that husband presents no authority on brief for any of his arguments here. See Rule 5A:20(d).

(2008) ("'Our standard of review requires that we presume the judgment of the trial court to be correct . . . .'" (quoting M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc))).

Here, the final order explicitly states that the trial court "considered all [the] testimony and other evidence presented by the parties." The order explicitly states that the court considered Code § 20-124.3 and the "argument of counsel." The order also explicitly states that the trial court "does not find that any of the changes in circumstances support Father's request for additional time with the children as being in the children's best interest." In addition, during the trial court's oral pronouncement of its decision, which was incorporated into the final order, the court noted, "The issue is whether there has been a material change and whether that would be in the best interest of the children, not [father's] best interest, not [father's] new wife, or [father's] new family, but these children's best interest." Based on the record, we cannot find that the trial court applied an incorrect standard.

### B. Evidence to Support the Trial Court's Decision

Father claims the evidence does not support the trial court's decision to leave the pre-existing custody order in place. In reviewing this claim, we are mindful that "'[a]s long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.'" Rice v. Rice, 49 Va. App. 192, 201, 638 S.E.2d 702, 707 (2006) (quoting Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999)). The trial court here did not abuse its discretion.

Father in his argument for changing the custody arrangements of the parties was asking the trial court to order that he have more visitation with some of the children and that he have physical custody of one of the parties' sons. In asking for physical custody, father essentially advocated taking the son away from the home where he had lived most of his life with his

- 8 -

siblings, away from the school and the community where he was involved in numerous activities, and move him to a different state, to live with father's new family, and attend a different school – all against the son's wishes. Father's only evidence that this significant change would be good for the son – or the other children – related to the son's expulsion from his current school for possession of marijuana.[7]

In explaining its pronouncements, the trial court noted that father made contradictory arguments, sometimes contending that it was important for the son to be engaged with his school friends, and at other points claiming it was bad for the son to be involved with his school friends. As the court noted, no evidence was presented that the son's friends were "bad individuals," nor was there any suggestion in the evidence presented to the trial court that mother had no control over the son, which prompted him to get involved with people smoking marijuana.

The trial court had evidence before it that mother wanted the son to acknowledge his mistake and take responsibility for having marijuana at the school, whereas father wanted the son to deny his guilt. The trial court had evidence that mother took the son to his drug counseling program, whereas father admitted that he refused to take the son to this program during visitation because "[w]e had other things planned for that visitation. It was spring break." The court also had evidence that the student who sold the drugs to the parties' son would not be attending that same high school when the son re-enrolled.

Father presented a lot of evidence about the animosity between mother and his new wife, but the evidence did not prove that this animosity created significant problems for the children or for his relationships with the children. He presented information about the school in Maryland where he wanted to enroll the son, but he presented no evidence to prove that the current school

---

[7] Father also argued that he was retiring from the military and would have more time to spend with the children. While this change made father more available, it did not necessarily mean that it was in the children's (or the son's) best interests to uproot any of the children.

was inadequate.[8] The evidence did prove that the children were generally doing well with their studies and were involved in a number of extracurricular activities, both through the school and in their community. Although the son was expelled from school for several months, nothing suggested that mother was somehow to blame in this incident, and the trial court clearly believed that her response to the incident was more appropriate than father's response. Again, the trial court did not abuse its discretion here.

In short, a trial court has discretion in determining the credibility of the witnesses and in weighing the evidence. See Brown, 30 Va. App. at 539, 518 S.E.2d at 339. Although father may disagree with the weight that the trial court gave to some of his evidence, the record contains sufficient evidence to support the trial court's ruling. Very little evidence suggested that changing the custody or visitation arrangements would have any benefit for the children. Therefore, we find that the trial court did not abuse its discretion, and, thus, we affirm the trial court's denial of father's motions. See Joynes v. Payne, 36 Va. App. 401, 416, 551 S.E.2d 10, 17 (2001) ("As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal.").

---

[8] During the pendency of this case in the trial court, the son was schooled at home through homebound instruction. By the time that the final order was entered, however, the period of expulsion was ending so that the boy could return to his regular public school that fall.

### III. Conclusion

We find the trial court did not commit any prejudicial error in its rulings during the course of these proceedings nor did it abuse its discretion in denying father's petition to change the custody and visitation arrangements for the parties' children. Therefore, we affirm the trial court's decision.[9]

<u>Affirmed.</u>

---

[9] Father included a request that this Court award to him the attorney's fees and costs associated with this appeal. As we have affirmed the trial court, as father provides no rationale to support his request, and as we see no reason to grant his request, we deny father's request for an award of the fees and costs associated with this appeal.