COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Frank and McClanahan
Argued at Richmond, Virginia


JULIE ANN LAYTON DOERING
                                                                    OPINION BY
v.      Record No. 1234-06-2                    JUDGE ELIZABETH A. McCLANAHAN
                                                                    MAY 19, 2009
NEAL JOSEPH DOERING


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

(Robert W. Partin; Locke & Partin, PLC, on brief), for appellant.

Mary Burkey Owens (Jace M. Padden; Owen & Owens PLC, on
brief), for appellee.


Julie Ann Layton Doering (wife) appeals from a final decree of divorce from Neal Joseph

Doering (husband). Wife contends the trial court erred in (i) refusing to incorporate the parties'

property settlement agreement (PSA) into the final divorce decree, and (ii) entering a final decree

reducing wife's spousal support from the sum provided in the PSA. For the following reasons,

we affirm the trial court.

I. Background

In reviewing the trial court's decision on appeal, we view the evidence in the light most

favorable to husband, the prevailing party below, granting him the benefit of any reasonable

inferences. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That

principle requires us to discard the evidence of [wife] which conflicts, either directly or

inferentially, with the evidence presented by [husband] at trial." Id. (citations and internal

quotation marks omitted).

The parties married in 1988 and had one child, born a year later. They entered into the PSA in February 2003, and then separated. Among other things, the PSA provided for husband to pay wife $4,000 per month in spousal support. The PSA further stated, however, that "[s]aid sum of spousal support shall be modifiable upon a material change of circumstances which warrants a change in the amount of spousal support to be paid to the [w]ife"; and either party could "pursue" such modification "upon petition to the proper [c]ourt." In addition, the PSA provided for husband to pay wife $1,200 per month in child support, which was also subject to modification based on a material change in circumstances.

In August 2003, wife filed an action for divorce, in which she requested that the PSA be incorporated into the divorce decree. In his answer and cross-bill to wife's action, husband alleged that the PSA was executed under duress, fraud, and misrepresentation by wife and that it was unconscionable, and, therefore, husband requested that the PSA be set aside.

On October 29, 2004, the parties appeared before the trial court and presented evidence *ore tenus* on husband's motion to set aside the PSA. The evidence included, *inter alia*, details regarding the parties' financial status. After hearing the evidence and argument of counsel, the court ruled from the bench that, while the PSA was "a lousy agreement" for husband in terms of his spousal and child support obligations, it was a valid and enforceable agreement. Thus, the court denied husband's motion. The court noted, however, in regard to wife's subsequent enforcement of the PSA, that the evidence indicated "there [had] been some considerable change in circumstances [] affecting the ability of [husband] to pay" the spousal and child support as provided in the PSA.

It appears from the record that husband then filed a motion in November 2004 seeking a modification of his spousal and child support obligations under the PSA.[1]  Shortly thereafter, wife responded by filing a motion requesting that the trial court "affirm, ratify and incorporate" the PSA into an order, and determine the amounts husband owed under the agreement.

On June 17, 2005, the parties appeared before the trial court and presented evidence *ore tenus* in support of their respective motions.  The evidence again included, *inter alia*, details regarding the parties' financial resources and obligations.  Based on this and similar evidence the court had already heard in the case, the court ruled from the bench that it would not incorporate the PSA into any court order.  As the court explained, if it did, the parties would be before it "on a weekly basis" with wife seeking court-ordered support through contempt proceedings, given that "there's no way under the sun [husband] can meet the [spousal and child support payment] obligations that [the PSA] imposes on him.  He doesn't have the financial wherewithal [to do so]."  In fact, as the court further found, husband could not "afford" to make those payments on his salary when the PSA was executed, which was "almost 40 percent more money than he's making right now."  The court also refused to impute any income to husband, finding that he was "doing the best that he can" in terms of earning an income.  The court was actually "astounded" that husband had been able to command his previous salaries given his limited education and training.

Because of husband's material change in income occurring between the execution of the PSA in 2003 and the 2005 evidentiary hearing, the trial court further ruled from the bench that it

---

[1] Husband's motion is not in the file from the circuit court.  However, wife states on brief that, after the court held the PSA valid and enforceable, husband "requested that the trial court enter spousal and child support orders that varied from the amounts set forth in the written agreement."  In the transcript of the parties' *ore tenus* hearing in June 2005, wife's counsel below also referenced husband's November 2004 "motion to change support."  The motion is further referenced in at least two notices filed with the court for hearing argument on the motion.

was reducing husband's spousal support obligation to $330 per month, and reducing his child support obligation to $536 per month, effective as of November 2004. Finally, the court advised the parties that they could "re-litigate the same [support] issues on the final decree of divorce" if they desired to do so.

The parties presented no additional evidence in the case regarding their incomes and financial obligations. Accordingly, in the parties' final divorce decree, entered on April 18, 2006, the trial court ordered husband to pay $330 per month in spousal support and $536 per month in child support, effective as of November 11, 2004.

II. Analysis

A. Denial of Wife's Motion to Incorporate PSA into Divorce Decree

Wife argues the trial court erred in denying her request to incorporate the PSA into the final divorce decree pursuant to Code § 20-109.1.

Code § 20-109.1 provides, in relevant part, as follows:

> Any court *may* affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce whether from the bond of matrimony or from bed and board, or by a separate decree prior to or subsequent to such decree, . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary.

(Emphasis added.)

"The language of Code § 20-109.1 gives the trial court discretion in determining whether a [PSA] should be incorporated by reference into a final decree of divorce. Absent an abuse of discretion, the trial court's decision must be upheld on appeal." Forrest v. Forrest, 3 Va. App. 236, 239, 349 S.E.2d 157, 159 (1986); see Mayers v. Mayers, 15 Va. App. 587, 589, 425 S.E.2d 808, 809 (1993) (citing Forrest in support of this principle); Owney v. Owney, 8 Va. App. 255,

- 4 -

259, 379 S.E.2d 745, 748 (1989) (explaining that the trial court, in exercising its discretion, "may incorporate all, none or selected provisions of the [PSA]").

Here, the trial court gave a reasonable explanation for not incorporating the parties' PSA into the final decree of divorce based on the current financial position of husband and the wife's potential "weekly" need for the contempt power of the court to enforce the agreement.[2] The trial court, therefore, did not abuse its discretion in refusing to incorporate the parties' PSA into their final divorce decree.

## B. Modification of Spousal Support in Final Decree

Wife next argues that "[t]he trial court erred by modifying spousal support as agreed by the parties without first incorporating the parties' [PSA] with regard to spousal support or entering an order consistent with Virginia Code § 20-109." In doing so, according to wife, the court erroneously "ignored" other terms of the PSA, after holding that it was a "valid and enforceable" agreement.[3] We disagree. Based on our review of the record, the spousal support

---

[2] "The purpose of [Code § 20-109.1] is to facilitate enforcement of the terms of an incorporated [PSA] by the contempt power of the court." Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 866-67 (1975); see Smith v. Smith, 41 Va. App. 742, 745-48, 589 S.E.2d 439, 440-42 (2003); Parra v. Parra, 1 Va. App. 118, 129, 336 S.E.2d 157, 163 (1985). Incorporation, however, "is not a prerequisite to the binding effect of the [PSA] as between the two parties." Id. It results, instead, in the PSA being "enforceable under either contract law or through the court's contempt power." Hering v. Hering, 33 Va. App. 368, 373-74, 533 S.E.2d 631, 634 (2000). Thus, a trial court's refusal to incorporate a PSA into a divorce decree simply deprives the court of its contempt power for purposes of enforcing the agreement. Owney, 8 Va. App. at 259, 379 S.E.2d at 748.

[3] Wife argues on brief that the trial court "completely ignored the [parties' PSA] when it determined spousal support and child support, despite having held that the [PSA] was valid and enforceable." However, wife's question presented for this second argument states: "The [t]rial [c]ourt abused its discretion when [it] entered a [f]inal [d]ecree that varied from the terms of the parties' valid, written marital agreement." To make her point, wife lists a number of husband's obligations under the PSA other than spousal support, and then notes, for example, husband's obligation to provide life insurance, which was not included in the final decree. But, in fact, the court addressed certain of those obligations in the final decree (i.e., health insurance, past medical expenses, and private high school tuition), none of which wife mentions.

award was neither inconsistent with, nor in violation of, the PSA, the Code § 20-109 limitations, or Virginia case law.

Code § 20-109(C) provides in relevant part, that

> [i]n suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract.

This provision of the statute thus

> limits the authority of a trial court to make or modify spousal support awards when an agreement exists. "In such cases, the intent of the parties as expressed in the agreement controls, and the agreement is treated as a contract and construed in the same manner as all contracts." White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999). The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties' contract.

Smith v. Smith, 41 Va. App. 742, 751, 589 S.E.2d 439, 443 (2003); see Newman v. Newman, 42 Va. App. 557, 568-70, 593 S.E.2d 533, 539-40 (2004); Fleming v. Fleming, 32 Va. App. 822, 826, 531 S.E.2d 38, 40 (2000). In other words, "[a]bsent equitable grounds warranting rescission, a [PSA] cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief." Newman, 42 Va. App. at 568-69, 593 S.E.2d at 539.

---

We do not read wife's argument as a challenge to the court's treatment of any of those listed obligations, as wife develops no argument for them. Rather, wife specifically asserts the only error by the trial court was with regard to spousal support: "The trial court erred by modifying spousal support as agreed by the parties without first incorporating the parties' [PSA] with regard to spousal support or entering an order consistent with Virginia Code § 20-109."

Thus, to the extent wife intended to challenge the court's treatment of any of husband's obligations in the final divorce decree other than spousal support, that challenge is waived under Rule 5A:20(e). This rule requires that appellant's opening brief include "[t]he principles of law, the argument, and the authorities relating to each question presented . . . ." Rule 5A:20(e). Unsupported assertions of error "do not merit appellate consideration," Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992), nor will this Court "search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." Id.

- 6 -

In the instant case, Code § 20-109(C) thus required husband, in seeking modification of the payment of spousal support under the PSA, to show that the agreement authorized such modification. See Newman, 42 Va. App. at 568-69, 593 S.E.2d at 539. Husband clearly met this burden in obtaining such relief from the trial court. First, the PSA expressly authorized a modification of the payment of spousal support to wife upon a material change in circumstances warranting such change, which either party could pursue upon petition to the trial court. Second, viewing the evidence in the light most favorable to husband, husband established that the trial court's modification of his spousal support obligation under the PSA warranted such change based on the material change in his income between 2003 and 2005, nearly a forty percent reduction.

Finally, wife cites no Virginia authority, nor have we found any, requiring a trial court to incorporate the PSA into a final decree before ruling on a party's request to modify a certain provision in the agreement pursuant to its express terms providing for such modification. Indeed, imposition of such a requirement would be contrary to the discretion granted to the trial court under Code § 20-109.1 over whether to incorporate a PSA into a court decree, as discussed above in subsection A. In short, neither Code § 20-109.1 nor Code § 20-109(C) imposes such a requirement. Nor will we construe them to do so. See Signal Corp. v. Keane Fed. Sys., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003) ("In this Commonwealth, courts are required to apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes.").

### III. Conclusion

For these reasons, we affirm the judgment of the trial court.

Affirmed.